UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LENA PETERS,<br><br>                    Plaintiff,<br><br>     vs.<br><br><br>USAA GEN. INDEM. CO.,<br><br>                    Defendant. | 4:24-CV-04147-RAL<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL |

**INTRODUCTION**

A discovery dispute is before the court on the complaint of Lena Peters, who alleges breach of contract, bad faith, and vexatious refusal to pay on the part of USAA General Indemnity Company in the handling of two property insurance claims. See generally Docket Nos. 1 & 23. Ms. Peters moves this court to compel production of information and documents withheld by defendants. Docket No. 23 at 1. Ms. Peters further seeks attorney's fees as recompense for bringing the motion. Id. The court has original jurisdiction over the matter pursuant to 28 U.S.C. § 1332. This opinion resolves plaintiff's Motion to Compel and for Attorney's Fees [Docket No. 23], which the district court referred to this magistrate judge under 28 U.S.C. § 636(b)(1)(A). Docket No. 27.

**FACTS¹**

On March 4, 2022, pipes and an expansion tank burst inside Lena Peters' Sioux Falls, South Dakota, home.  Docket No. 1, ¶¶ 14, 23, 25. Ms. Peters was informed by a claims adjuster who worked for USAA, her home insurer, that the pipe burst was caused by "the city's misregulation of pressure in [her] neighborhood."  Id. ¶¶ 15–22, 38.  Ms. Peters filed a claim under her USAA policy.  Id. ¶ 28.  Ms. Peters alleges to have suffered "extensive flood damage throughout [her] home to both the structure itself, as well as much of [her] personal property."  Id. ¶ 26.  Despite a series of communications, inspections, and estimates, Ms. Peters alleges she faced partial denials of her claims, and nonpayment of funds USAA did approve.  Id. ¶¶ 23–77.  Because of USAA's inaction and Ms. Peters' lack of resources to fund her own repairs, she alleges a mold issue developed inside the home.  Id. ¶¶ 83-125.

Separately, on May 12, 2022, Ms. Peters claims a derecho struck and severely damaged her home.  Id. ¶ 79.  Damage Ms. Peters attributes to the derecho include "the windows and doors . . . bec[oming] unsealed and loose in their frames," as well as damage to "the home's roof, downspouts, gutters, and siding."  Id. ¶¶ 137–38.  Ms. Peters also claims the storm caused "moisture and water intrusion into the house, damaging the floors and walls adjacent to the windows and doors."  Id. ¶ 139.  Ms. Peters filed a new claim with USAA for this damage.  Id. ¶¶ 140–41.  Ms. Peters then underwent a new series of

---

¹ To consider plaintiff's motion to compel, the court takes the facts as asserted in the complaint and plaintiff's briefs.  No imprimatur of the court as to their veracity is intended.

estimates, inspections, and nonpayment of uncontested funds. Id. ¶¶ 135–253. According to Ms. Peters, one of USAA's third-party inspectors told her that she and her son could probably fix some of her issues with her fence and a/c unit themselves. Id. ¶¶ 184–88.

While USAA did make some payments to Ms. Peters, see id. ¶¶ 105, 110–11, 114; cf. id. ¶¶ 127–28, Ms. Peters claims breach of contract for USAA's "refus[al] to pay [her] the full amount of benefits owed under the Policy." Id. ¶ 258. Ms. Peters also claims USAA breached its contract by "failing to adequately investigate the damages associated with [her] claims[,] . . . unnecessarily delaying the claims processes, and not addressing the covered damages in both claims in a reasonable amount of time." Id. ¶¶ 257, 259. Ms. Peters also claims bad faith and vexatious refusal to pay and seeks punitive damages and attorney's fees. Id. ¶¶ 262–72. Ms. Peters correspondingly seeks discovery to fortify these assertions. Cf. Docket No. 25-6. For some requests, USAA contends that Ms. Peters seeks more than it is legally required to provide, or that it will provide or has already provided what was requested. See Docket No. 31. This opinion resolves the disputes.[2]

---

[2] In the District of South Dakota, "a party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. L.R. 37.1. Ms. Peters filed a certification as a section of her brief, which this court deems adequate and, unless addressed below, supported by the filings attached. Docket No. 24 at 1; see, e.g., Docket No. 25-10. USAA does not dispute compliance with the certificate requirement. See generally Docket No. 31.

**DISCUSSION**

**A.    Discovery, Generally**

"Discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence." <u>Sentis Grp., Inc. v. Shell Oil Co.</u>, 763 F.3d 919, 926 (8th Cir. 2014).  Discovery aids in "narrowing and defining the disputed legal and factual issues." <u>Williams v. McClain</u>, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989).  Information sought through discovery must be (1) nonprivileged; (2) "relevant to any party's claim or defense"; and (3) "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Discovery, like the evidence it seeks, "is relevant where it 'has a tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence.' " <u>Lynch v. Experian Info. Sols., Inc.</u>, 581 F. Supp. 3d 1122, 1126 (D. Minn. 2022) (quoting FED. R. EVID. 401) (alteration in original).  But "unlike trial evidence, discovery is not curtailed by most of the limiting features of the Federal Rules of Evidence." <u>Hirschman v. Agraria Ins.</u>, No. 4:23-CV-04123-KES, 2024 WL 4068745, at *2 (D.S.D. Sept. 5, 2024) (citation omitted).  "As such, its scope is 'extremely broad.' " <u>Id.</u> (quoting <u>Richter v. XL Ins. Am.</u>, No. 4:23-CV-04094-CCT, 2024 WL 3461643, at *3 (D.S.D. July 18, 2024)).

4

"Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry." Pearson v. Royal Canin USA, Inc., No. 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023). A court must consider:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

Among the devices provided for by the Federal Rules of Civil Procedure to facilitate the exchange of discovery are interrogatories and requests for the production or inspection of documents. See FED. R. CIV. P. 33–34. "Interrogatories allow a party to learn facts within an adversary's knowledge, 'so that questions of fact may be reduced to a minimum before trial.'" Stedillie v. Milford Cas. Ins., No. 4:23-CV-04048-KES, 2024 WL 449630, at *2 (D.S.D. Feb. 6, 2024) (quoting Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951)) (cleaned up). Requests for production allow a party to seek any document "in the responding party's possession, custody, or control," so long as the request is "within the scope of Rule 26(b)." FED. R. CIV. P. 34(a).

Should a party refuse to produce discovery under these rules, Rule 37 allows the requesting party to move for "an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iii)–(iv). The movant "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks,

5

Inc., 981 F.2d 377, 380 (8th Cir. 1992)). "If that showing is successful, the resisting party bears the burden of convincing the court otherwise." Woods v. JDHQ Hotels LLC, No. 4:23-CV-04026-RAL, 2024 WL 1886468, at *2 (D.S.D. Apr. 30, 2024) (citing Sprint Commc'ns Co., 316 F.R.D. at 264); see also Moses v. Halstead, 236 F.R.D. 667, 671 (D. Kan. 2006) ("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance."). "If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits." Stedillie, 2024 WL 449630, at *3 (citing Fed. R. Civ. P. 26(b)(2)(c)(iii)).

## B.   The Contested Discovery

### 1.   Interrogatory No. 1

Interrogatory No. 1 asks:

State whether you claim that the Plaintiff, or her agents, at any time made any admissions against interest in this case, other than those documented in the claims file(s) or contained within an audio/visual recording that is produced in discovery. If so, and for each such admission, identify:

(a)   The date of such admission;

(b)   The substance of such admission;

(c)   All witnesses to said admission; and

(d)   The person to whom such admission was directed.

Docket No. 25-1 at 5.

In its formal response, USAA stated it was "presently unable to answer Interrogatory 1 as phrased," and objected that the interrogatory sought

6

"disclosure of legal opinions, counsel's trial strategies, and protected work product," that it was "premature and theoretical/hypothetical at this early stage of litigation," and that the term "admission against interest" was "undefined, vague, and ambiguous." Docket No. 25-6 at 3–4. USAA also objected as to overbreadth and undue burden as the interrogatory "could be interpreted as requiring disclosure of virtually all impeachment material." Id. at 3.

After meeting and conferring and settling on a definition, see Docket No. 25-10 at 3, USAA "represented to [Ms. Peters'] counsel that [it] was unaware of any such admissions against interest." Docket No. 24 at 9. So, here, Ms. Peters "only asks that [USAA] timely supplement its response to this request, pursuant to Fed. R. Civ. P. 26(e), in the event it *does* become aware of any such statements." Id.

The rules of civil procedure allow a party to bring a motion to compel when "a party fails to answer an interrogatory submitted under Rule 33." FED. R. CIV. P. 37(a)(3)(B)(iii). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." FED. R. CIV. P. 37(a)(4). Ms. Peters is not claiming here that USAA failed to respond to Interrogatory No. 1, nor that it provided an evasive or incomplete answer. She merely uses this motion to remind USAA of their ongoing duty to supplement. That is not what a motion to compel is for. The motion to compel Interrogatory No. 1 is denied.

### 2.    Interrogatory No. 2

Interrogatory No. 2 asks:

> Have you ever been a defendant in a civil lawsuit alleging
> insurance bad faith, unfair claims processing, or breach of
> contract related to your claims processes involving a residential
> storm damage claim, or a residential water damage claim
> (including, but not limited to, pipe bursts or overflows) since
> August 1, 2014?  If so, identify the case by name, court, and trial
> docket number, and indicate the substance of the allegations and
> the outcome of the case.

Docket No. 25-1 at 5.  The parties since agreed "to a temporal limitation of

January 1, 2017, as opposed to 2014."  Docket No. 24 at 11.

USAA provided a list of a dozen cases nationwide.  Docket No. 25-13.

Ms. Peters "then identified eight additional cases that appeared responsive . . .

but were not on [USAA's] original list."  Docket No. 31 at 11.  USAA agreed to

attempt refinement of its search parameters to yield a result that included

those cases.  Docket No. 26-1 at 5–6.

In its response here, USAA challenges the relevance of the interrogatory,

because anything listed would be "from unrelated cases across the country

with different insureds, different losses, different insurance policies, and

different jurisdictions with different laws."  Docket No. 31 at 2.  But as

Ms. Peters points out, and courts in this district have held, such materials are

relevant to establish a " 'pattern and practice' designed to disenfranchise

policyholders."  Docket No. 24 at 11; see Rapid City/BH Lodging, LLC v.

Amguard Ins., No. 4:23-CV-04053-RAL, 2024 WL 1937858, at *3 (D.S.D. May

2, 2024) ("This district has routinely compelled discovery of prior lawsuits for

bad faith and extracontractual claims.") (collecting cases and quoting Haukaas

8

v. Liberty Mut. Ins., No. 4:20-CR-0461-KES, 2021 WL 5416251, at *5 (D.S.D.

Nov. 19, 2021) (Haukaas I), adopted as modified, 2022 WL 1719412 (D.S.D.

May 27, 2022) (Haukaas II)) (cleaned up).

    While apparently acknowledging that position, USAA argues that

Ms. Peters still does not qualify for the discovery because "her [m]otion does

not point to a single piece of evidence showing any wrongful conduct on her

own claims." Docket No. 31 at 2 (emphasis removed). "Without showing that

something wrongful occurred on her own claims," USAA alleges, "what

happened on unrelated insured's claims is irrelevant." Id.

    That is not the standard. As USAA recognizes in the same brief,

"[i]nformation is discoverable . . . if it is relevant to any party's claim or

defense." Docket No. 31 at 8 (quoting FED. R. CIV. P. 26(b)(1)). One of

Ms. Peters' claims is bad faith, Docket No. 1, ¶¶ 262–68, which requires a

showing of "the insurer's knowledge of the lack of a reasonable basis for denial

[of benefits]." Harvieux v. Progressive N. Ins., 915 N.W.2d 697, 701 (S.D. 2018)

(quotation omitted). Details of USAA's similar, past, litigation could help

establish such knowledge. That is all relevance requires. Nothing requires

Ms. Peters to "prove up her claims before being entitled to discovery." Haukaas

II, 2022 WL 1719412, at *3.

    Despite its objections, USAA "still believes it is likely that [it] can revise

its method of searching to locate the responsive cases." Docket No. 31 at 11.

USAA's concern is the possibility it will have to perform "a manual, file-by-file

review of every lawsuit involving [it] across the country going back to 2017." Id.

This court does not sympathize with such concerns, however, as an insurer's ability to search on parameters like loss type or the fact of litigation is not the stuff of science fiction. Haukaas I, 2021 WL 5416251, at *9. So where an insurer intentionally hobbles itself by evading such functionality, its handicap will not "serve as a shield from responding." Stedillie, 2024 WL 449630, at *7.

Yet in the spirit of compromise, Ms. Peters offered an alternative if USAA cannot produce the originally requested list—"a list of all property-casualty claims going back to January 1, 2017, [where] the responses [are not] limited geographically or jurisdictionally to South Dakota." Docket No. 24 at 12. USAA "believes such a list will be easier to identify and agrees to produce such a list to [Ms. Peters] if it is unable to arrive at the more targeted list requested in the original interrogatory." Docket No. 31 at 11.

But according to Ms. Peters, USAA has yet to provide either. Docket No. 37 at 27. It must provide one or the other. The motion to compel Interrogatory No. 2 is granted.

### 3.    Interrogatory No. 3

Interrogatory No. 3 asks:

> Please identify any person employed by you who handled, reviewed, supervised, and/or audited Plaintiff's claims, including persons in the chain of command above these individuals up to the head of the claims department. In order to protect the privacy of those employees, Plaintiff agrees that none of their identities shall be used for any purpose outside this lawsuit, or otherwise made available to the public without redacting sensitive information pertaining to the employees.

Docket No. 25-1 at 5.

10

Although USAA provided a partial answer, what remains outstanding is the identity of "the direct supervisors of those individual employees already identified." Docket No. 26-1 at 6. USAA informed Ms. Peters in April that the information was "being pulled" and it would have it "shortly." Id. But according to Ms. Peters, the information was not supplemented. Docket No. 37 at 27.

"This court has long held that the evaluations and personnel files of claims adjusters and their supervisors are both relevant and discoverable in bad faith disputes," because they can "reveal an improper corporate culture that incentivizes the mishandling of a claim." Stedillie, 2024 WL 449630, at *4 (quotations omitted). *A fortiori*, the supervisors' identities are relevant and discoverable.[3]

USAA believes that its agreement to provide the identities renders Ms. Peters' motion moot. Docket No. 31 at 2. It does not. Merely agreeing to comply with discovery obligations does not cure a failure to answer. Only answering does. The motion to compel Interrogatory No. 3 is granted. USAA is ordered to produce the promised discovery within 21 days of the date of this order.

---

[3] Ms. Peters exceeds the scope of an interrogatory by arguing for both the identity and personnel files of supervisors. Docket No. 24 at 12; Hickman v. Taylor, 329 U.S. 495, 504 (1947). The court considers the argument for identities here, and as to personnel files when considering Request for Production No. 4, which Ms. Peters argues separately. See Docket No. 24 at 17.

### 4.    Interrogatory No. 4

Interrogatory No. 4 asks USAA to "[s]tate the name and address of any potential party to this lawsuit, not already a party hereto."  Docket No. 25-1 at 5.

In its response, USAA argued the interrogatory sought a legal opinion and protected work product, that it was overbroad as it potentially implicated all people, that the answer would be either in Ms. Peters' or others' possession, and that at any rate, the deadline for joinder had passed.  Docket No. 25-6 at 8.

Ms. Peters argues that "this is a routine discovery request in civil cases, and it serves an important function."  Docket No. 24 at 13.  In her briefing, it appears what Ms. Peters seeks is the knowledge that she sued the correct USAA entity.  See id.  Ms. Peters points out that the deadline for joinder had not passed as of the original deadline for USAA to respond.  Id.

But USAA informs the court that it only learned of Ms. Peters' dissatisfaction with its original answer upon the filing of the motion to compel. Docket No. 31 at 14.  Ms. Peters does not address that assertion in her reply brief.  See generally Docket No. 37.  Upon review of the documents submitted by both parties, nowhere does it appear Ms. Peters sought a meet-and-confer related to Interrogatory No. 4.  See, e.g., Docket No. 25-10 (letter listing what Ms. Peters considered USAA's deficient responses—skipping Interrogatory No. 4).

"The meet-and-confer requirement is not an empty formality."  Buergofol GmbH v. Omega Liner Co., No. 4:22-CV-04112-KES, 2023 WL 4547835, at *2

(D.S.D. July 13, 2023) (citation omitted).  Before turning to the courts for assistance, parties "must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what . . . information the discovering party is capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention."  Id. (quoting Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 456, 459 (D. Kan. 1999)).

Ms. Peters did work with USAA toward resolving many disputes.  But to allow her to shoehorn in an argument on an unannounced grievance would defeat the intent of the rule.  The meet-and-confer requirement applies evenly to all discovery disputes brought to the court.  The requirement was not met as to Interrogatory No. 4, so Ms. Peters' motion to compel its answer is denied.

### 5.    Interrogatory No. 5

Interrogatory No. 5 asks:

> List and identify all software in use by Defendant's claims handlers involved with Plaintiff's claims from March 4, 2022, to the present. For each software program (e.g., Microsoft Outlook, Microsoft SharePoint, Aclaimant, Xactimate, etc.), provide a brief description of what tasks the software program is used to accomplish (e.g., "document storage and management;" "workflow and analytics platform for active risk management," "property repair estimation software," etc.) in the claims process.  In the event the software is proprietary, Plaintiff agrees that none of the information furnished in response to this Interrogatory shall be used for any purpose outside this lawsuit, or otherwise made available to the public without redacting the information.

Docket No. 25-1 at 5.

In its original answer, USAA provided the names of two applications—

Xactimate, used for "property repair and contents valuation and estimation,"

and Property Loss Report, used for "maintaining [Ms. Peters'] claim file materials and details, [and] housing loss email communications and claims communications through the member portal, all non-privileged portions of which have been produced in this litigation."  Docket No. 25-6 at 10.

Meet-and-confer discussions reveal USAA's uncertainty as to the definition of "software"—whether it means stand-alone software that might be bought off the shelf, or also to applications that serve as extensions to stand-alone software.  See Docket No. 26-1 at 6–7.  Ms. Peters' identified three programs from the claims adjusters' personnel files she sought more information on:  MICA, Claim X or ClaimXperience, and ClaimCenter.  Id. at 7.  USAA told Ms. Peters it would "get back to [her] ASAP with names of anything that qualifies as the overarching software," id., but according to Ms. Peters, USAA never supplemented.  Docket No. 37 at 27.

USAA renews a vagueness argument here, suggesting that "[w]ithout understanding where [the] line [is] drawn . . . [Interrogatory No. 5] could require listing every computerized function that USAA GIC's adjusters use in adjusting, which would effectively be an endless list."  Docket No. 31 at 14–15. While USAA's concerns may have support in the definition of "software," see, e.g., Software, BLACK'S LAW DICTIONARY (12th ed. 2024), with context, it appears clear to the court that Ms. Peters is asking USAA to identify brand-name applications, or named in-house applications, that claims adjusters use in their roles as claims adjusters and a description of how they are used.

That such an application may be embedded or serve as an extension to other applications does not vitiate its responsive character if it is a unique product or homegrown solution that serves a discrete purpose in the process. The court understands this request as different from one seeking a list of "functions" within such a product—the pertinent functions within each product would be included in the description of how the product is used. Support for the court's understanding is found within the meet-and-confer email, where Ms. Peters seeks information on named products such as MICA, not for USAA to explain how the "print" function works in Xactimate. Further support is found in the interrogatory itself, which specifies the information USAA should supply for each "software program," and gives examples of such programs like Aclaimant and Xactimate. Docket No. 25-1 at 5.

USAA also questions relevance, because Ms. Peters "has not identified any disputed issue in the case that relates to the software [it] used when adjusting the claim." Docket No. 31 at 15. But the court can envision how if USAA's adjusters use decision-assisting software to consider the question of coverage, pricing, or the timing of payment, knowing which products can assist Ms. Peters in exploring USAA's conformity to recommendations made by such products. In a case where Ms. Peters is alleging USAA acted in bad faith, evidence of adherence to or variance from standardized recommendations is relevant, even if not dispositive.

USAA is also under the impression that "ubiquitous software," such as Microsoft Outlook, was outside the scope of the ask. Id. (internal quotation

marks omitted).  Not so, says Ms. Peters, claiming "understanding the document management system and type of email in use by Defendant helps Plaintiff with formulating additional discovery requests in the future and narrows the definitions which could be used to obtain that discovery."  Docket No. 24 at 14.

But Rule 26 does not allow discovery for the purpose of "helping [Ms. Peters] formulate additional discovery requests," or "narrow[ing] the definitions which could be used to obtain that discovery."  It allows discovery "that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Whether a USAA adjuster uses Outlook or Gmail does not bear on Ms. Peters' claims and is irrelevant.

The motion to compel Interrogatory No. 5 is granted in part and denied in part.  USAA must supplement its answer to identify and describe the use of any application used by its adjusters in the adjustment of Ms. Peters' claims that are the subject of this lawsuit, if such application's functional purpose is/was directly related to insurance claims adjustment and not a universal purpose such as sending an email or storing a document.  If USAA is unsure which side of that line a particular application falls, USAA should err on the side of disclosure.

### 6.    Request for Production No. 1

Request for Production No. 1 seeks:

> Defendant's complete claim files relating to the claims arising from the Pipe Burst Damage (Claim 024463283-016) and the Storm Damage (Claim 024463283-017) which are the subject matter of this lawsuit, whether maintained in Defendant's field office,

regional office, home office, or any other office, with color copies of
any photographs, and including without limitation:

(a)     All letters, memoranda, emails, and other forms of
written communication to or from any employee of
Defendant relating in any way to the processing of the
claims at issue in this action;

(b)     All written records of any oral communication,
whether in person or by telephone, to or from any
employee of Defendant relating in any way to the
processing of the claims at issue in this action;

(c)     All written communications and written records of oral
communications, whether in person, by telephone, or
by email between any employee of Defendant and any
person or third party relating in any way to the claim
at issue in this action;

(d)     All written records of any investigation conducted in
connection with the claim at issue in this action;

(e)     All written communications and written records of oral
communications (whether in person or by telephone)
to or from any employee of Defendant relating in any
way to Plaintiff's claims;

(f)     All other documents pertaining to the claims at issue
in this litigation;

(g)     Any and all documents showing or relating to loss
reserves set for Plaintiff's claims;

(h)     The file folders in which the preceding documents are
kept; and

(i)     Any audio or visual recordings of conversations,
stenographic reports of conversations, transcripts of
recordings, or similar memoranda of conversations
that pertain in any manner to Plaintiff's claims.

Docket No. 25-1 at 6.

While USAA did produce what it considers its "claims files," <u>see</u> Docket

No. 31 at 16, it objects for vagueness as to subpart (f) in the itemized list, and

17

claims it is not withholding anything from Ms. Peters as to the other subparts. Id.

As to subpart (f), if a responsive document exists external to what USAA considers its claims file, the court disagrees with USAA that the request is vague. Yes, "[a] request seeking documents 'pertaining to' or 'concerning' *a broad range of items*" does require a "respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." Cardenas v. Dorel Juv. Grp., Inc., 230 F.R.D. 611, 623 (D. Kan. 2005) (quotation omitted) (ellipsis in original, emphasis added). But when a party seeks documents pertaining to "a specific event . . . the request is not overly broad on its face." Id. Ms. Peters seeks documents pertaining to her own two claims—not all claims—or the insurance industry in general. Such a request is unsurprising given the litigation concerns these claims. The court presumes that a document "pertains to" specific claims if it references them. If USAA stores any such documents in a place other than a claims file, it must produce them.

USAA considers the request for the remaining subparts moot, because it plans to supplement its discovery responses to state that it possesses no further documents. Docket No. 31 at 16–17. But as already stated, USAA's plan does not render the request moot—only following through with its plan does. The motion to compel Request for Production No. 1 is granted. USAA is

18

ordered to produce the promised discovery within 21 days from the date of this order.

### 7.    Request for Production No. 2

Request for Production No. 2 seeks:

Defendant's complete underwriting files referring or relating in any way to the policy at issue in this action, with color copies of any photographs, and including, without limitation:

> (a)    All letters, memoranda, emails, and other forms of written communication and written records or oral communications, whether in person or by telephone, referring or relating in any way to the issuance or renewal of the policy at issue in this action;

> (b)    Screen-printouts of the file folders in which the preceding documents are kept, if kept electronically[.]

Docket No. 25-1 at 6–7.

It is subpart (b) that USAA challenges. It considers screenshots of the file folders irrelevant and "discovery on discovery." Docket No. 31 at 17 (citing Fish v. Air & Liquid Sys. Corp., No. CV GLR-16-496, 2017 WL 697663, at *15 (D. Md. Feb 21, 2017) ("[T]he manner in which Ford maintains documents for document retention purposes is not relevant to the allegations in this case . . . 'Discovery on discovery' is not an appropriate topic of discovery and numerous courts have disallowed such discovery.").

Ms. Peters argues, "in several conferences, [USAA] indicated that [its] file-keeping system is 'not structured that way' (paraphrasing). Plaintiff has asked several times for explanation as to how the system is structured, so it can revise its request in a way that makes it possible for Defendant to answer." Docket No. 24 at 16.

19

USAA has the better argument. Ms. Peters' claims are unrelated to the structure of USAA's file-keeping system. That makes the request outside the scope of what Rule 26 allows. FED. R. CIV. P. 26(b)(1). As already suggested in Section B(5), <u>supra</u>, it is not USAA's discovery obligation to help Ms. Peters draft efficient discovery requests. The motion to compel Request for Production No. 2 is denied.

### 8.    Request for Production No. 3

Request for Production No. 3 seeks "[a]ny and all documents showing the criteria Defendant used for reserving losses on residential storm damage claims and water damage claims (including, but not limited to, pipe burst or overflow claims) from August 1, 2014, to present." Docket No. 25-1 at 7.

According to USAA, the content forming this dispute was provided to Ms. Peters on May 23, 2025. Docket No. 31 at 18. Ms. Peters does not dispute this. Docket No. 37 at 27. The motion to compel Request for Production No. 3 is denied as moot. However, because USAA provided the discovery only *after* Ms. Peters filed the instant motion to compel, sanctions may apply under Fed. R. Civ. P. 37.

### 9.    Request for Production No. 4

Request for Production No. 4 seeks:

Copies of all personnel files of Defendant's employees and/or agents who handled, reviewed, supervised, and/or audited the Plaintiff's claim, including persons in the chain of command above these individuals up to the head of the claims department. In order to protect the privacy of the affected employees, Plaintiff agrees that none of these documents shall be used for any purpose outside this lawsuit, or otherwise made available to the public

20

without redacting the names and other identifying information
pertaining to the employees.

Docket No. 25-1 at 7.

The responses outstanding for Request for Production No. 4 are the

personnel files (minus agreed upon "sensitive information") of the supervisors

of those employees or agents who directly handled Ms. Peters' claims.  Docket

No. 24 at 18; Docket No. 31 at 13.

USAA agreed to provide such files but has not.  For the reason discussed

in Section B(3), <u>supra</u>, it must.  The motion to compel Request for Production

No. 4 is granted.  USAA must provide the promised discovery within 21 days

from the date of this order.

### 10.    Request for Production No. 5

Request for Production No. 5 seeks:

Any and all documents or organizational charts showing the
current "chain of command" of Defendant's claims offices that
handled Plaintiff's claims, including the personnel who handled or
reviewed Plaintiff's claims, and any and all documents or
organizational charts describing the relationship between
Defendant and any other corporate parent, subsidiary, or joint
venture.

Docket No. 25-1 at 7.

In her brief, Ms. Peters limits her ask to "an organizational chart

depicting the adjusters Defendant indicate[s] have direct involvement with the

claim (and the chain of command for their supervisors and subordinates)."

Docket No. 24 at 18–19.

USAA states that no such document exists.  Docket No. 31 at 19.  And as

USAA accurately notes, the court cannot compel it to produce a document that

21

does not exist.  Id. (citing Stedillie, 2024 WL 449630, at *10).  But USAA did

not supplement its discovery responses to state that no such document exists.

It must do so.

Request for Production No. 5 is granted.  If no documents are responsive,

USAA must supplement its discovery response to say so.

## 11.  Request for Production No. 6

Request for Production No. 6 seeks:

Any and all documents related to the following subject matters,
with respect to Defendant's handling of residential storm damage
claims, or water damage claims (such as pipe burst or overflow
claims), from August 1, 2014, to present:

(a)     cost containment programs or efforts to lower costs with
respect to handling of property/casualty or businessowners'
claims;

(b)     efforts to increase profitability with respect to handling of
property/casualty or businessowners' claims;

(c)     efforts to reduce loss ratios or claim severity costs;

(d)     bonus or award programs for Defendant's employees who
handled, reviewed, supervised, and/or audited Plaintiff's
claims, including persons in the chain of command above
these individuals up to the head of the claims department;

(e)     goals, targets, or objectives which are or have been
communicated to claims handlers or supervisory personnel
involved with property/casualty or businessowners' claims;

(f)     increases in salary, bonuses, commissions, or awards for
personnel handling property/casualty or businessowners'
claims, including supervisory personnel up to the head of
the claims department; and,

(g)     performance-based incentive plans used by or
communicated to personnel handling property/casualty or
businessowners' claims, including supervisory personnel up
to the head of the claims department.

Docket No. 25-1 at 7–8.  The parties agreed to limit the responsive window to
2017-present.  See Docket No. 24 at 20; cf. Docket No. 31 at 20.

     USAA claims that it will be responding with "formal" documents such as
"the USAA Annual Performance Incentive Plan Summary, the Compensation
Overview, bonus scorecards for the handling adjusters . . . and [the] USAA
Corporate Bonus Plan for 2017—present."  Docket No. 31 at 20.  USAA claims
it would be overly burdensome to search for less formal documents such as
emails.  Id.

     The subject matter is clearly relevant to Ms. Peters' claims, and "all" such
documents are routinely compelled by this court.  See, e.g., Bogensberger v.
USAA Cas. Ins., No. 4:21-cv-04064-KES, 2024 WL 3415892, at *12-13 (D.S.D.
July 15, 2024).  Informal documents such as emails reveal the less polished
corners of an organization, where a manager may amplify or distort formal
policies, or even offer ad hoc incentives not contemplated organization wide.
The court appreciates that searching the emails of every USAA employee would
be overly burdensome and likely irrelevant.  The court will not accept that the
burden is too great to search the emails of the very employees that worked
Ms. Peters' claims.  See Clark v. Unum Grp., No. 4:20-CV-04013-KES, 2022
WL 17251352, at *10 (D.S.D. Nov. 28, 2022) (tailoring similar request to
employees who worked on claim in question).

     The motion to compel Request for Production No. 6 is granted in part and
denied in part.  USAA will produce all formal company-wide responsive
discovery, and any emails or other informal documents responsive as to the

employees (including supervisors) identified for Interrogatory No. 3.  Such production must be delivered to plaintiff within 21 days of the date of this order.

### 12.    Request for Production No. 7

Request for Production No. 7 seeks:

> Any and all documents, including video presentations, PowerPoint™ Presentations, manuals, computer presentations, bulletins, guidelines, or anything else used to train, assist, or provide guidance to Defendant's property/casualty or businessowners' personnel in processing storm claims, or water damage claims.  This request is limited to documents in use by Defendant's personnel from August 1, 2014, to present.  It includes, but is not limited to, information available online.

Docket No. 25-1 at 8.

USAA states that it produced the disputed discovery for this request on May 23, 2025.  Docket No. 31 at 20.  Ms. Peters does not dispute this assertion.  Docket No. 37 at 27.  The motion to compel Request for Production No. 7 is denied as moot.  Again, the court notes that USAA's production of the discovery after Ms. Peters filed the instant motion is sanctionable under Rule 37.

### 13.    Request for Production No. 8

Request for Production No. 8 seeks "[a]ny and all company newsletters designed to inform Defendant's employees of news or developments from August 1, 2014, to present."  Docket No. 25-1 at 8.

In conferral, the parties agreed to limit the request to "formal company announcements/[news]letters that relate to claims handling" from 2017-present.  Docket No. 24 at 20–21; see Docket No. 31 at 21.  USAA conveys an

24

understanding that the request was to be further limited to only those
"announcements or newsletters that are published or distributed on a regularly
occurring basis (e.g. monthly), but would not include unique or one-time
announcements or letters."  Docket No. 31 at 21.  Ms. Peters does not dispute
USAA's understanding of how the parties agreed to narrow the request.  See
generally Docket No. 37.  Guided by that understanding, USAA "has not
identified any documents responsive to the request."  Docket No. 31 at 21.  But
USAA has not supplemented its discovery responses to say so.  Cf. Docket No.
37 at 27.

Request for Production No. 8 is granted.  If no documents are responsive,
USAA must supplement its discovery response to say so.

### 14.    Requests for Production Nos. 9 & 10

Request for Production No. 9, as modified in conferral, seeks "the
requested 'learning content' from [USAA's] Knowledgebase sites."  Docket No.
24 at 21.

Request for Production No. 10, as modified in conferral, seeks
"presentations related to claims handling, guidance, or performance metrics of
claims handling, with a temporal limitation of January 1, 2017, to the present."
Id. (internal quotation marks omitted).  USAA asserts that it has provided
responses to Ms. Peters that satisfy both requests.  Docket No. 31 at 21–22.
Ms. Peters does not dispute this assertion.  Docket No. 37 at 27.  The motion to
compel Requests for Production Nos. 9 & 10 is denied as moot.

15.    **Request for Production No. 11**

Request for Production No. 11 seeks "[t]he complaint, answer, and written discovery in each litigation file in all cases involving claims of breach of contract or bad faith against Defendant, arising out of first-party property/casualty or businessowners' storm damage or water damage claims from August 1, 2014, to present." Docket No. 25-1 at 9. In conferral, the parties agreed to temporally limit the request to January 1, 2017. Docket No. 24 at 22.

USAA's position is that it should not have to provide anything, because what Ms. Peters seeks is either publicly available or unduly burdensome to produce. Docket No. 31 at 22–23. Ms. Peters cites the policy of courts in this district to require production of past litigation materials. Docket No. 24 at 22.

Ms. Peters is correct—to a degree. This court has rejected contentions from insurers that the ostensible public availability of past litigation materials renders the burden to obtain them equal. See, e.g., Hirschman, 2024 WL 4068745, at *4. As it stands, the universe of litigation this discovery request contemplates is still unknown, as USAA claims it "continues to work toward" locating responsive cases. Docket No. 31 at 11. Expecting Ms. Peters to blindly search public databases for responsive cases in order to then locate their pleadings is unacceptable when USAA can rely on its institutional knowledge to complete the work faster.

But this court does not accept that Ms. Peters is entitled to all written discovery produced in such cases. While various cases naming USAA as

defendant may "share some factual or legal vector," <u>Hirschman</u>, 2024 WL
4068745, at \*10 (quotation omitted), it is impossible that every discovery
response in those cases will be relevant here.  In <u>Lillibridge v. Nautilus
Insurance Company</u>, which Ms. Peters cites in support, the court refused to
compel "any document related to the prior litigation."  No. CIV. 10-4105-KES,
2013 WL 1896825, at \*8 (D.S.D. May 3, 2013) (internal quotation marks
omitted).  Rather, it compelled a limited subset of documents and left open the
possibility of the plaintiff later requesting additional, specific documents if he
could "establish that they [were] relevant and there [was] a sufficient factual or
legal nexus to his claim."  <u>Id.</u> at \*7.  The court does so here, as well.

The motion to compel Request for Production No. 11 is granted in part
and denied in part.  USAA is ordered to produce the pleadings in cases
responsive to this request that are in its possession, custody, or control.[4]  The
motion to compel written discovery from the cases is denied.  The pleadings
from other litigation must be produced within 21 days from the date of this
order.

### 16.    Request for Production No. 12

Request for Production No. 12 seeks "[a]ll transcripts of depositions or
trial testimony of any of Defendant's employees or officers in any case alleging
breach of contract or bad faith arising out of first-party property/casualty or

---

[4] Although the cases requested in Requests for Production No. 11 & 12 are
similar to those requested in Interrogatory No. 2, they are not mirror-images.
<u>Contra</u> Docket No. 31 at 23.  USAA should use the description in these
requests to guide its search.

businessowners' storm damage claims or water damage claims from August 1, 2014, to present." Docket No. 25-1 at 9. Ms. Peters has since temporally limited the request to August 1, 2017, to present. Docket No. 24 at 23.

Although USAA agreed to produce the deposition of a claims adjuster that worked Ms. Peters' claims, USAA considers it an undue burden to produce deposition or trial transcripts for all responsive cases nationwide. Docket No. 31 at 24–25. USAA argues it would have to perform a "file-by-file review . . . contact[ ] the relevant defense counsel . . . [and] read, line-by-line, for information that would need to be designated confidential under the protective order in this case." Id. at 25.

The court is not persuaded that it would be an undue burden to locate and read such transcripts, the number of responsive cases currently standing at 21. As Ms. Peters notes, this court considers such transcripts relevant, so long as the underlying cases "share factual and legal issues with the current case." Bogensberger, 2024 WL 3415892, at *6 (collecting cases). That threshold is met here. The motion to compel Request for Production No. 12 is granted. The transcripts must be provided within 21 days.

### 17. Request for Production No. 13

Request for Production No. 13 seeks:

All documents referencing, or related to, any document or complaint filed with or received from the South Dakota Division of Insurance involving Defendant's handling of first-party property/casualty or businessowners' storm damage claims or water damage claims from August 1, 2014, to present. This includes, but is not limited to, complaints, complaint registers or logs, complaint files, correspondence to and from any state regulator, any documents showing disposition of complaints,

28

> regulatory actions, market conduct examinations, cease and desist
> orders, consent orders, reports of examinations, corrective orders,
> corrective action plans, annual or periodic reports, or regulatory
> bulletins.

Docket No. 25-1 at 9.

In conferral, Ms. Peters limited this request to South Dakota "DOI Complaints and Investigations," from 2017-present. Docket No. 25-14 at 8. "USAA . . . agreed to produce the DOI complaints and responses for South Dakota DOI proceedings from 2017 to the present." Docket No. 31 at 25. But it has not done so. Docket No. 37 at 27.

This court has previously held that DOI complaints are relevant to bad faith claims because they may help prove a pattern or practice of unlawful behavior. Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 490–91 (D.S.D. 2012). USAA does not dispute relevance, it merely (again) asks the court to consider the motion moot or imminently moot because it agreed to send the documents. But, again, the motion is not moot until USAA produces the discovery. The motion to compel Request for Production No. 13 is granted. USAA shall produce the promised discovery within 21 days.

### 18.    Requests for Production Nos. 14 & 15

Request for Production No. 14 seeks:

> All documents in Defendant's possession that provide guidance to
> your employees concerning the following claims practice subject
> matters from August 1, 2014, to present:
>
> > (a)    Defendant's Best Practices in regard to
> > property/casualty claims involving storm damage
> > claims, or water damage claims (including, but not
> > limited to, pipe burst or overflow claims);

      (b)    an insurer's duty of good faith or the obligation to avoid bad-faith conduct;

      (c)    unfair claims practices or the rules related to unfair claims practices;

      (d)    the duty to pay all undisputed portions of a claim without regard to whether other portions are disputed, or without requiring the insured to agree to settle disputed aspects of a claim as condition of receiving amounts owing on undisputed aspects of a claim; and,

      (e)    reinsurance, cost-shifting, or any other arrangement regarding Defendant's, its subsidiaries', or parents' duty, responsibility, or liability to pay extracontractual damages owed to its insureds.

Docket No. 25-1 at 9–10.

Request for Production No. 15 seeks "[a]ll documents identifying software in use by Defendant's claims handlers involved with residential storm damage or water damage claims from January 1, 2022, to present." Docket No. 25-1 at 10.

USAA asserts it provided the responsive material for these requests when it provided its learning content. Docket No. 31 at 26-27. Ms. Peters does not dispute this assertion. Docket No. 37 at 27. The motion to compel Requests for Production Nos. 14 & 15 is denied as moot.

### 19.    Request for Production No. 16

Request for Production No. 16 seeks "[a]ll documents referencing or related to training or instruction with respect to search capabilities, information retrieval capabilities, or the capability of generating reports/notes or locating reports/notes from January 1, 2022, to present." Docket No. 25-1 at 10.

In conferral, USAA questioned the relevance of this request, to which

Ms. Peters responded:

> The purpose of RPD No. 16 is not to conduct 'discovery on discovery' or to obtain irrelevant or privileged information. Rather, the request seeks documents that demonstrate what search, information retrieval, and reporting capabilities were available to the adjusters and personnel involved in handling the claim at issue. This is directly relevant to the claims and defense in a bad faith case, as it bears on what information the insurer's representatives could access and how they could access it when making decisions on the claim. The insurer's ability (or inability) to retrieve information, generate reports, or locate notes is central to evaluating whether the claim was handled reasonably, and in good faith. For example, if the search systems or training limited access to certain information, that fact would also be relevant to the reasonableness of the insurer's actions. Thus, documents reflecting training or instruction on these capabilities go to the heart of what information was available to decision-makers and whether they acted appropriately in the circumstances. It is also reasonably calculated to lead to the discovery of admissible evidence, as it could help aid the parties in resolving the re-occurring problem we are having with USAA not having any "automated way of searching for such materials" per your responses in Section J(1)(ii) and (iii); L(1); and N(1).

Docket No. 32-3 at 3.

USAA asserts that it provided everything it believes addresses this request when it provided the learning content discussed above. Docket No. 31 at 27. Although Ms. Peters appears to dispute that assertion, see Docket No. 37 at 27, this court cannot compel something that does not exist. The motion to compel Request for Production No. 16 is denied as moot. Again, the court notes that USAA's production of the discovery after Ms. Peters filed the instant motion is sanctionable under Rule 37.

**20.    Request for Production No. 17**

Request for Production No. 17 seeks "[a]ll documents referencing or related to document retention or destruction procedures from January 1, 2022, to present."  Docket No. 25-1 at 10.

The parties agreed to limit this request to USAA's official retention policy, and USAA agreed to produce it but has not.  Docket No. 31 at 27–28 ("USAA GIC has located and will produce under the protective order its Knowledge Central document "Record Retention Schedule P&C."); Docket No. 37 at 27 (no production as of date of reply brief).  The motion to compel Request for Production No. 17 is granted.  USAA must produce its document retention policy to Ms. Peters within 21 days of the date of this order.

**21.    Request for Production No. 18**

Request for Production No. 18 seeks "[t]rue and correct copies of Defendant's, Defendant's corporate parent(s), and/or any of Defendant's subsidiaries' or joint ventures' full annual financial statements from January 1, 2022, to present."  Docket No. 25-1 at 10.

Ms. Peters states, "Defendant produced copies of its 2022 and 2023 annual financial statements already, on March 5, 2025.  Plaintiff only asks that Defendant supplements that disclosure as the 2024 annual financial statement becomes available, and as future statements become available into the future."  Docket No. 24 at 27.

As the court discussed in Section B(1), supra, a motion to compel exists to seek a remedy from a party's failure to respond to a discovery request, not to

remind parties of their duty to supplement.  The motion to compel Request for Production No. 18 is denied.

**C.    Attorney's Fees**

Ms. Peters moves the court for an award of attorney's fees "necessitated by Defendant's continuing failure to respond to discovery," and "lack[ ] [of] substantial justification for these failures."  Docket No. 24 at 27 (internal quotation marks omitted).   Federal Rule of Civil Procedure 37 requires a court to award a movant's reasonable expenses (including attorney's fees) incurred in making a meritorious motion to compel.  FED. R. CIV. P. 37(A).  There are exceptions; the court "must not order this payment" if the movant filed the motion before meeting and conferring, "the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust."  Id. (cleaned up).  USAA notes that in the past, this court has considered an opposing party "substantially justified" if it prevailed on a "meaningful percentage" of claims.  Docket No. 31 at 29 (quoting Stedillie, 2024 WL 449630, at *11).

With laser focus on that verbiage, USAA might dodge responsibility if the court viewed this holding purely as a win/loss column.  But USAA misses the point.  In Stedillie, and other cases where the court cited percentage of success, the opposing party brought colorable legal arguments against each disputed request.  See Stedillie, 2024 WL 449630, at *4–10; Hirschman, 2024 WL 4068745, at *3–10; see also Eddie's Truck Ctr., Inc. v. Daimler Vans USA LLC, No. 5:21-CV-05081-VLD, 2023 WL 4624888, at *4–10 (D.S.D. July 19, 2023).

Here, USAA acquiesced to many of Ms. Peters' claims but never delivered the responses.

To excuse the delay, USAA appeals to the recurring illness of one of its former attorneys. Docket No. 31 at 29; <u>see</u> Docket No. 39. But Ms. Peters was more than generous with extensions due to that illness. <u>See, e.g.</u>, Docket Nos. 25-4 & 25-15. At the time, there were four attorneys who noticed their appearance to represent USAA. And they worked for two law firms with many other attorneys. If one attorney was unable to complete the necessary work, it was incumbent on others to pick up the slack. <u>Cf.</u> <u>In re LaFrance</u>, 311 B.R. 1, 24 (Bankr. D. Mass. 2004) ("An attorney suffering from [a long-term or chronic] illness must obtain appropriate assistance or supports to avoid reasonable risk of harm to clients."); <u>see also</u> D.S.D. LR CIV 83.2(E). Instead, even as late as its response brief here, USAA declared Ms. Peters' motion "imminently moot" because of its plan to respond, <u>see, e.g.</u>, Docket No. 31 at 38, yet was no further compliant two weeks later, upon the filing of Ms. Peters' reply brief. Docket No. 37 at 27. Excusing such foot-dragging would be an unjust result for the party that could only end it by involving the court.

The expenses Ms. Peters incurred bringing her motion to compel Interrogatories Nos. 2 & 3, and Requests for Production Nos. 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16 & 17 are granted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that Ms. Peters' Motion to Compel [Docket No. 23] is granted in part and denied in part in accordance with this opinion. Defendant must provide, within 21 days of the date of this order, answers or documents responsive to the granted discovery requests or a plain statement that no such document exists. Documents withheld on privilege grounds must be disclosed as provided by Federal Rule of Civil Procedure 26(b)(5)(A). It is further

ORDERED that on or before August 4, 2025, Ms. Peters shall file a motion for attorney's fees complete with detailed time records demonstrating the time her lawyers spent drafting the award-eligible portion of her briefs. USAA shall have 21 days thereafter to respond to the motion. Ms. Peters may file a reply 14 days thereafter if she so desires.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v. Becerra, 73 F.4th 966, 972–73 (8th Cir. 2023). Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356, 357–58 (8th Cir. 1990).

35

DATED this 18th day of July, 2025.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge