UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LENA PETERS,<br>Plaintiff,<br>vs.<br>USAA GEN. INDEM. CO.,<br>Defendant. | 4:24-CV-04147-RAL<br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL<br>DOCKET NO. 63 |

**INTRODUCTION**

Plaintiff Lena Peters, who alleges in her complaint breach of contract, bad faith, and vexatious refusal to pay on the part of USAA General Indemnity Company in the handling of two property insurance claims, has filed a second motion to compel. See Docket Nos. 1 & 63. Plaintiff also seeks attorney's fees as a sanction for having to bring the motion. Docket No. 63. Defendant USAA General Indemnity Company ("USAA"), opposes the motion to compel and the request for attorney's fees. Docket No. 69.

The court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332. The district court referred plaintiff's motion to this magistrate judge under 28 U.S.C. § 636(b)(1)(A). Docket No. 67.

## FACTS[1]

On March 4, 2022, pipes and an expansion tank burst inside plaintiff Lena Peters' Sioux Falls, South Dakota, home. Docket No. 1, ¶¶ 14, 23, 25. Plaintiff filed a claim under her USAA policy and alleges USAA did not pay the entirety of her claim as required by the insurance policy. Id. ¶¶ 23-77. Because USAA did not pay and plaintiff lacked the money to make repairs herself, she alleges a mold issue developed inside the home. Id. ¶¶ 83-125.

Separately, on May 12, 2022, plaintiff claims a derecho struck and severely damaged her home. Id. ¶ 79. Plaintiff filed a new claim with USAA for this damage. Id. ¶¶ 140–41. Plaintiff alleges USAA again did not pay the entirety of her claim as required by the insurance policy. See id. ¶¶ 105, 110–11, 114; cf. id. ¶¶ 127–28, ¶ 258. Plaintiff claims USAA breached its contract, denied payment in full of her claims in bad faith, and vexatiously refused; she seeks compensatory damages, punitive damages, and attorney's fees. Id. ¶¶ 262–72.

Plaintiff served a second set of discovery requests on USAA. Docket No. 66-1. USAA objects to some of the discovery requests and asserts that has already provided, or that it will provide discovery in connection with other requests. See Docket No. 69. This opinion resolves the disputes.[2]

---

[1] To provide context for plaintiff's second motion to compel, the court takes the facts as asserted in the complaint and plaintiff's briefs. The court intends no imprimatur of the veracity of those facts.

[2] In the District of South Dakota, "a party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. L.R. 37.1. Plaintiff filed a

## DISCUSSION

### A. Discovery, Generally

"Discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014). Discovery aids in "narrowing and defining the disputed legal and factual issues." Williams v. McClain, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989). Information sought through discovery must be (1) nonprivileged; (2) "relevant to any party's claim or defense"; and (3) "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Discovery, like the evidence it seeks, "is relevant where it 'has a tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence.' " Lynch v. Experian Info. Sols., Inc., 581 F. Supp. 3d 1122, 1126 (D. Minn. 2022) (quoting FED. R. EVID. 401) (alteration in original). But "unlike trial evidence, discovery is not curtailed by most of the limiting features of the Federal Rules of Evidence." Hirschman v. Agraria Ins., No. 4:23-CV-04123-KES, 2024 WL 4068745, at *2 (D.S.D. Sept. 5, 2024) (citation omitted). "As such, its scope is 'extremely broad.' " Id. (quoting Richter v. XL Ins. Am., No. 4:23-CV-04094-CCT, 2024 WL 3461643, at *3 (D.S.D. July 18, 2024)).

---

certification. Docket No. 65. USAA does not dispute compliance with the certificate requirement. See generally Docket No. 69.

"Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry." Pearson v. Royal Canin USA, Inc., No. 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023). A court must consider:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

Among the devices provided for by the Federal Rules of Civil Procedure to facilitate the exchange of discovery are interrogatories and requests for the production or inspection of documents. See FED. R. CIV. P. 33–34. "Interrogatories allow a party to learn facts within an adversary's knowledge, 'so that questions of fact may be reduced to a minimum before trial.' " Stedillie v. Milford Cas. Ins., No. 4:23-CV-04048-KES, 2024 WL 449630, at *2 (D.S.D. Feb. 6, 2024) (quoting Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951)) (cleaned up). Requests for production allow a party to seek any document "in the responding party's possession, custody, or control," so long as the request is "within the scope of Rule 26(b)." FED. R. CIV. P. 34(a).

Should a party refuse to produce discovery under these rules, Rule 37 allows the requesting party to move for "an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iii)–(iv). The movant "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks,

Inc., 981 F.2d 377, 380 (8th Cir. 1992)). "If that showing is successful, the resisting party bears the burden of convincing the court otherwise." Woods v. JDHQ Hotels LLC, No. 4:23-CV-04026-RAL, 2024 WL 1886468, at *2 (D.S.D. Apr. 30, 2024) (citing Sprint Commc'ns Co., 316 F.R.D. at 264); see also Moses v. Halstead, 236 F.R.D. 667, 671 (D. Kan. 2006) ("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance."). "If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits." Stedillie, 2024 WL 449630, at *3 (citing FED. R. CIV. P. 26(b)(2)(c)(iii)).

## B. The Contested Discovery

### 1. USAA's Bonus Plan or Performance Incentive Plan

Many of the disputed discovery requests in plaintiff's second motion to compel discovery have to do with USAA's bonus plan, so the court sets forth some key provisions of the plan that are relevant to the disputes.

USAA previously provided documents describing its bonus plan, or performance incentive plan. Docket No. 66-2. The 2022 plan defines the "administrator" of the plan to be "the Executive Vice President ("EVP"), Human Resources for USAA (the EVP in charge of USAA's Human Resources department if there is no EVP, Human Resources) or such other persons or entity appointed by the EVP, Human Resources to administer the Plan. Continuation of a prior appointment of an Administrator under the terms of this Plan by the EVP, Human Resources shall be deemed an appointment by

the EVP, Human Resources." See id. at 32 (¶ 2.1 of USAA's Amended and Restated USAA Annual Performance Incentive Plan ("the plan").

USAA then defines "Annual Line of Business Performance Results" in its 2022 plan as "the level of achievement in any Measurement Period against the target annual line of business performance goals. . ." Id. at 33 (¶2.5 of the plan). Those performance goals (Member Contact Line of Business Performance Scorecards and Non-Member Contact Line of Business Performance Scorecards) will generally be set in the first 90 days of a measurement period, but the performance scores "may be determined based in part on discretionary factors outside of the Annual Line of Business Performance Results." Id. (¶¶ 2.5 & 2.6 of the plan).

The 2022 plan defines "USAA" or "the Association" to mean "United Services Automobile Association, its subsidiaries and any successor thereto." Id. at 36 (¶ 2.26 of the plan). A "participant" is "a person designated by the Employer as an employee or former employee of a Participating Employer who is eligible to receive an Award for such Measurement Period." Id. (¶ 2.23 of the plan). A "Participating Employer" means "USAA and any domestic Affiliate unless the Board determines such Affiliate shall not be a Participating Employer." Id. (¶ 2.24 of the plan).

**2. Interrogatory Nos. 6 & 7**

Interrogatory No. 6 states: "Describe the established measures or criteria for the 'Member Contact Line of Business Performance Scorecard(s)' referenced on USAA GIC_016332 at ¶ 2.5 for the years 2022-2026." See Docket No. 66-1

at 2. Interrogatory No. 7 states "Describe the established measures or criteria for the 'Non-Member Contact Line of Business Performance Scorecards' for the years 2022-2026." Id. at 3

**a. Timespan of Interrogatory**

USAA's first objection—which is a global objection to almost every discovery request discussed herein—is to the timeframe of the requested information. USAA notes that plaintiff filed this lawsuit on August 9, 2024. USAA argues that any information about the plan post-lawsuit is not relevant and not discoverable because "Plaintiff's claims arose and were handled between 2022 and 2024." Docket No. 69 at 3.

Plaintiff argues that her claims remain "open" and that information about the bonus plan after she filed her complaint in this matter is relevant to whether USAA acted and continues to act in bad faith. Docket No. 64 at 22. Neither party cites any case law to support their position.

Plaintiff's complaint alleges the pipe-burst claim was submitted to USAA in 2022; plaintiff then alleges a series of actions by USAA until August 5, 2024. See Docket No. 1 at 5-17. Plaintiff alleges the windstorm-claim was submitted to USAA in 2022; plaintiff then alleges a series of actions by USAA until July 5, 2024. Id. at 17-30. Plaintiff filed her complaint with this court August 9, 2024. Docket No. 1.

It is likely that, if any USAA employee was rewarded financially for the handling of plaintiff's claim, any such reward was made in the years 2022-2024. It is unlikely in the extreme that any employee received a bonus or

reward from USAA for the handling of plaintiff's claim after litigation was filed. At that point, attorneys for USAA would be making recommendations if not outright decisions about whether it would be beneficial to the litigation to pay plaintiff's claims or to continue to stay the course of USAA's partial denial of the claims up to that point.

The court concludes that information about bonuses paid to employees is relevant for the period from 2022 up to the date litigation was filed. Information about bonuses paid to employees after litigation was initiated is not relevant. The court notes that plaintiff could easily resolve this issue by posing an interrogatory to USAA that asked if any of the persons identified in response to interrogatory number three received a bonus or award for the handling of plaintiff's claim after the inception of this litigation. If USAA's answer is "yes," plaintiff may revisit this court's ruling as to the proper timeframe for the discovery requests. The court's ruling that only documents from 2022 to August 9, 2024, are relevant applies to *all* discovery requests addressed in this opinion with the exception of net worth information of USAA—unless otherwise specified.

**b. Documents Already Provided**

USAA relies on Fed. R. Civ. P. 33(d), which provides as follows:

> **(d) Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient

> detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilation, abstracts, or summaries.

See Fed. R. Civ. P. 33(d).

USAA's response to interrogatory no. 6 states, in part:

Please see the documents produced at

Bates Nos. USAA GIC_016301 to USAA GIC_016328 for 2022,

at USAA GIC_016345 to USAA GIC_016369 for 2023, and

USAA GIC_016385 to USAA GIC_016394 for 2024.

See Docket No. 66-1 at 3. USAA maintains that it need not provide any further response to interrogatory no. 6. It's answer to interrogatory no. 7 is the same. Id. at 4 (reciting the same Bates stamped documents as responsive to plaintiff's interrogatory).

Plaintiff claims that USAA's answers do not comply with Rule 33(d) and do not answer the interrogatory. The court agrees.

For example, for the 2022 bonus plan—found at Docket No. 66-4 at 2-29 (USAA GIC_016301 to 016328)--the plan is described in general terms, but the criteria for awarding a bonus is not specified. Id. Instead, "for more information" including the actual "categories, metrics, and weightings," the document directs the reader to access web pages within USAA's internal web site which plaintiff does not have access to. See Docket No. 66-4 at 28 (USAA GIC_016327). The reader is also invited to click on a hyperlink "Calculating

Annual Performance Incentive," which hyperlink plaintiff cannot access. Id. at 22 (USAA GIC_016321). See also Id. at 19.

The 2023 bonus plan similarly provides specifics through hyperlinks not available to plaintiff. Id. at 31 (USAA GIC_016345) (inviting reader to click on hyperlink "Our Behaviors" to see what the criteria is that the employee's performance is measured against). The same is true for the 2024 bonus plan. Id. at 63 (USAA GIC_016389) (instructing reader to click on "Enterprise Risk and Compliance Goals" and "Our Behaviors" to find out what criteria individual performance is measured against).

USAA can certainly answer interrogatory nos. 6 and 7 through production of documents in conformity with Rule 33(d), but it has not done so yet. USAA can either provide the documents linked to these three years' worth of bonus plans through hyperlinks or through reference to web pages, or it can answer the interrogatory with a narrative answer. If USAA opts to do the latter, the interrogatories must be signed under oath by an agent or employee (not a lawyer of record herein) of USAA. The lawyers may sign as to objections. Whichever method USAA chooses to answer interrogatories 6 and 7, USAA is ordered to respond to the interrogatories in accordance with this paragraph within 30 days from the date of this order.

**3. Interrogatory No. 8**

Interrogatory No. 8 states "Describe the 'discretionary factors outside the Annual Line of Business Performance Results' referenced on USAA GIC_016332, at ¶ 2.6 for the years 2022-2026." See Docket No. 66-1 at 4.

USAA (again relying on Rule 33(d)), states that it has already provided the documents that supply the answer to this question for the years 2022-2024 and points plaintiff to six specifically-identified Bates stamped documents it provided in discovery. Docket No. 66-1 at 5 (citing USAA GIC_016346, 016365, 016373, 016388, 016397, and 016398).

One of the cited documents provides that "scores may be determined in part on discretionary factors outside of the applicable scorecard (e.g. core earnings, risk appetite adherence, etc.)." Docket No. 66-4 at 70, ¶ 2.6 (USAA GIC_016398). Then USAA points to another provision that states that the USAA Board of Directors may determine anyone's score in its discretion for any reason, including failure "to satisfy one or more of [any] target annual enterprise goals set forth in the Annual Enterprise Performance Scorecard." Id. at ¶ 2.4 (USAA GIC_16398).

The court finds USAA's answer to be insufficient. Yes, the documents say that the Board of Directors has unfettered discretion to determine anyone's score for any reason. But the documents do not state that the Board of Directors is the *only* entity with discretion to adjust the scores nor does it state whether any of those other entities or persons' discretion is circumscribed more so than the Board's.

The court orders USAA to answer this interrogatory by stating whether anyone other than the Board has the power to determine scores discretionarily and, if so, who those entities or persons are, and, finally, what *their* discretion is for making a decision to adjust someone's scorecard. This answer must be

given in writing by an agent or employee of USAA under oath (not an attorney of record herein). An attorney may sign as to objections. USAA is ordered to provide this answer to interrogatory no. 8 within 30 days of the date of this order.

**4. Interrogatory Nos. 9 & 10**

Interrogatory No. 9 states "Identify the person(s) who created or set the established measures or criteria for the 'Member Contact Line of Business Performance Scorecard(s)" for the years 2022-2026." See Docket No. 66-1 at 5. Interrogatory No. 10 states "Identify the person(s) who created or set the 'discretionary factors outside the Annual Line of Business Performance Results' referenced on USAA GIC_016332, at ¶ 2.6 for the years 2022-2026." Id.

USAA states that it has already provided plaintiff documents in discovery that answer these interrogatories. See Docket No. 66-1 at 6 & 7. Specifically, USAA points to the same 11 Bates stamped documents as to both interrogatory no. 9 and 10. Id. One of these documents, USAA GIC_016361, identifies Mr. Bob Whittle as USAA's Chief Human Resources Officer in 2023, and another document, USAA GIC_16372, provides that the Administrator of the bonus plan for 2023 is the "Executive Vice President, Human Resources for USAA . . . or any other person or entity appointed by the EVP, Human Resources to administer the Plan." Id. USAA asserts that this and other like documents for the years 2022 and 2024 answer plaintiff's interrogatories.

USAA's answer is insufficient. These documents indicate who the Chief Human Resources Officer is in a given year, but they also indicate that persons

*other than* the Chief Human Resource Officer might be appointed to administer the bonus plan. Plaintiff's interrogatories asks who actually established the measures or criteria for the scorecards and who actually created or set the discretionary factors.

The court orders USAA to provide in a written narrative answer, signed under oath by an agent or employee of USAA (not an attorney herein) answers to interrogatories 9 and 10 indicating the names of the persons who *actually* established the measures or criteria for the scorecards for 2022, 2023, and 2024 and the names of the persons who *actually* created or set the discretionary factors for the years 2022, 2023, and 2024. Objections may be signed by USAA's attorneys. USAA is ordered to answer interrogatory nos. 9 and 10 within 30 days from the date of this order.

**5. Request for Production of Documents (RFP) Nos. 19 & 20**

RFP No. 19 asks for documents reflecting the financial condition of both USAA as well as its parent companies and sister companies for the years 2022 to the present. See Docket No. 66-1 at 8. RFP No. 20 asks for documents reflecting income from the P & C line of business from 2022 to the present for USAA as well as its parent and sister companies. Id. at 10

USAA objects to providing information about its parent and sister companies absent evidence that the corporate veil should be pierced, a proposition as to which plaintiff offers no evidence. Docket No. 69 at 7. As to USAA itself, USAA states it has already provided plaintiff with its annual report issued to its members for the years 2022-2025 and will provide that same

information for 2026 when it is available. Id. This annual report shows USAA's total revenue, total losses, net income, total assets, total liabilities, and net worth. Id.

Plaintiff argues that "USAA's family of companies that write property coverage appear to share a common claims operation: The same adjustors appear in matters involving Garrison Property & Casulaty, USAA General Indemnity Company, and USAA Casualty Insurance Company." Docket No. 64 at 25.

But the fact of the matter is that none of these other entities are named defendants herein. The named defendant herein is USAA General Indemnity Company. The bonus plan defines USAA as "United Services Automobile Association, its subsidiaries and any successor thereto." See, e.g. Docket No. 66-2 at 36 (¶ 2.26 of the plan). Plaintiff does not assert that Garrison Property and Casualty or USAA Casualty Insurance Company are subsidiaries or successors to USAA or that the documents USAA provided does not cover its subsidiaries or successors.

The fact that some of the same adjustors' names appear in connection with other companies is too slim a reed to require the financial information as to these other companies. Plaintiff does not claim that the financial documents USAA has provided for the years 2022 to 2025 are insufficient as to the named defendant in this case. The court denies plaintiff's motion to compel further production of documents with regard to RFP Nos. 19 and 20. USAA shall, as it has represented it will, provide the 2026 annual report when it is available.

**6. RFP No. 21**

RFP No. 21 seeks all payroll documents reflecting compensation paid to persons identified by USAA in response to interrogatory no. 3 for the years from 2022 to the present. See Docket No. 66-1 at 11. In discussions to attempt to resolve the dispute over this discovery request, plaintiff narrowed her request to any document that shows only an employee's base salary and additional bonuses. Docket No. 64 at 25. Plaintiff suggests that USAA has a document called a "payslip" that would reveal only this information. Id.

USAA suggests that this issue was before the court in a prior discovery motion (motion at Docket No. 23 involving RFP no. 6) and that the court declined to order the discovery. Docket No. 69 at 9-10. Plaintiff likewise suggests that the issue was before the court previously and that the court *ordered* the discovery. Docket No. 64 at 27. Both parties are wrong.

RFP no. 6 *was* previously before the court and it did request salary and bonus information (subparagraph (f)), but the court did not rule on whether it was appropriate or not. Docket No. 42 at 22-24. The court did not rule on the issue namely because USAA stated in its brief in opposition to the motion that it had already provided the documents plaintiff requested and would be providing more; USAA argued that the court "should therefore find Plaintiff's Motion moot." Docket No. 31 at 20. In her reply brief, plaintiff acknowledged receiving some documents, but noted USAA had failed to provide supplemental discovery. Docket No. 37 at 27-29. Plaintiff never specifically told the court that she had not received the requested salary and bonus information. Id. When the

court previously addressed RFP no. 6, the issue presented by RFP no. 21 was not decided.

RFP no. 21 is tied to the employees previously identified by USAA in response to plaintiff's interrogatory no. 3. Neither party informs the court how many persons were identified in response to interrogatory no. 3.[3] The court assumes it is but a handful of employees.

The court recognizes that employee compensation data is sensitive. However, this district has repeatedly held that such information is relevant to a claim of bad faith refusal to pay insurance benefits—particularly the awarding of bonuses for claims handling. Burke v. Ability Ins. Co., 291 F.R.D. 343, 352 (DSD 2013); Lyon v. Bankers Life & Cas. Co., Civ. No. 09-5070, 2011 WL 124629 at *8 (DSD Jan. 14, 2011). The court will order USAA to disclose only the base pay and any bonuses for the employees identified in interrogatory no. 3 and only for the years 2022-2024. If USAA has a single document that contains this information—such as the "payslip" suggested by plaintiff—then production of that document for each employee for each year will be sufficient. USAA is ordered to produce documents responsive to RFP no. 21 within 30 days of the date of this order. Such documents are ordered to be protected by the existing protective order issued by the district court at Docket No. 20.

[3] Interrogatory no. 3 sought the names of any employee who handled, reviewed, supervised, and/or audited plaintiff's claims.

**7. RFP Nos. 22 & 23**

RFP No. 22 seeks all communications to the persons identified in response to interrogatory no. 3 regarding measures or criteria for the "Member Contact Line of Business Performance Scorecard(s)" from 2017 to 2024. See Docket No. 66-1 at 12. RFP No. 23 seeks all communications to the persons identified in response to interrogatory no. 3 regarding the "discretionary factors outside the Annual Line of Business Performance Results" referenced on USAA GIC_016332, at ¶ 2.6 for the years 2017 to 2024. Id. at 12-13.

USAA states it has already produced documents responsive to this request and has identified those documents by their Bates stamps numbers. Docket No. 69 at 10. See also Docket No. 66-1 at 12-13 (identifying documents USAA GIC_016227 to 016409). Further, USAA has offered to confirm the scope of its custodial search for the identified employees, produce any additional responsive non-privileged communications for scorecard years 2017-2024, and serve a Rule 34(b)(2)(C) statement identifying anything withheld or certifying that no further responsive documents exist. Id. Based on what it has already produced and what it has offered to do, USAA asks the court to deny plaintiff's motion to compel as to RFP nos. 22 and 23 as moot. Id. at 11.

Plaintiff acknowledges that USAA has produced documents in response to these two RFPs and a privilege log.[4] Docket No. 72 at 22-23. But plaintiff states that USAA's counsel represented as of September 3, 2026, that he was

[4] In her reply, plaintiff does not take issue with USAA's privilege log. Docket No. 72 at 22-23.

not aware whether his client had searched for responsive documents, but represented he would confirm with USAA whether a search had been conducted and whether any responsive documents were identified. Id. To date, plaintiff claims she had not received the confirmation offered by USAA's counsel on September 3. Id. at 23.

The court finds that plaintiff has established good cause for the motion to compel and that it is not moot. The court orders USAA—within 30 days of the date of this order—to confirm that a custodial search has occurred, to confirm the scope of that search for identified employees, to produce any non-privileged communications for scorecard years 2017-2024, to produce a privilege log for any communications deemed by USAA to be privileged, and to provide revised written responses to RFP 22 and 23 identifying whether any documents have been withheld pursuant to objection, and certifying that no further responsive documents exist.

**CONCLUSION**

Based on the foregoing facts, law, and analysis, it is:

ORDERED that plaintiff's motion to compel [Docket No. 63] is granted in part and denied in part as described in greater detail within this opinion. It is further

ORDERED that for the matters on which this court granted plaintiff's motion to compel, USAA must produce the compelled discovery to plaintiff within 30 days from the date of this order. Should either party lodge objections

with the district court regarding this order, the effect of this order is stayed until the district court resolves those objections. It is further

ORDERED that if plaintiff wishes to pursue an award of attorney's fees, she must on or before November 10, 2026, file a motion for attorney's fees complete with detailed time records demonstrating the time her lawyers spent drafting the award-eligible portion of her motion. USAA shall have 21 days thereafter to respond to the motion. Plaintiff may file a reply 14 days thereafter if she so desires.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v. Becerra, 73 F.4th 966, 972–73 (8th Cir. 2023). Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356, 357–58 (8th Cir. 1990).

DATED October 21, 2025.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge